# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-81177-CIV-RYSKAMP/VITUNAC

SFM HOLDINGS, LTD. and
SALOMON MELGEN, M.D.,

      Plaintiffs,

vs.

JEROME FISHER,

      Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT WITH PREJUDICE

THIS CAUSE comes before the Court pursuant to Defendant Jerome Fisher's ("Fisher")

Motion to Dismiss Amended Complaint With Prejudice, filed October 15, 2009 **[DE 176]**.

Plaintiffs responded on November 9, 2010 **[DE 183]**.  Fisher replied on November 13, 2009 **[DE

184]**.  This motion is ripe for adjudication.

## I.      BACKGROUND

This pleading needs no introduction.  This Court is well aware of Plaintiffs' litigation

misconduct.  Nevertheless, this Court gave Plaintiffs a final chance to attempt to state a claim

against Fisher.[1]

---

[1] Plaintiffs again argue that this Court lacks jurisdiction.  Plaintiffs, however, ignore the fact that they fraudulently joined Fisher and that this Court has jurisdiction to dismiss a fraudulently-joined defendant, which is precisely the relief Fisher seeks.  *See Order Denying Motion to Remand,* **[DE 106]**, 8-26-2009, at 8 ("A federal court may retain jurisdiction over a fraudulently joined defendant and then dismiss the claims against that defendant. *See Dasma Invs., LLC v. Realty Assocs. Fund III, L.P.*, 459 F.Supp.2d 1294, 1300-03, 1305 (S.D. Fla. 2006) (dismissing claims in federal court against nondiverse defendant when there was fraudulent joinder).").

The Amended Complaint is a bundle of inconsistencies.  Plaintiffs neglect to realize that their allegations are belied by other documents that they have filed, of which this Court can take judicial notice, and are inconsistent with other pleadings that they have filed, of which this Court can also take judicial notice.  Indeed, the allegations in the Amended Complaint are even internally inconsistent.

## II.   <u>LEGAL STANDARD</u>

On a motion to dismiss, while the Court takes the plaintiff's allegations as true, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (citing *South Florida Water Mgm't Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir. 1996)).  Plaintiff's obligation to provide the grounds for his entitlement to relief requires more than "labels and conclusions," and a "formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal,* ___U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007)).  A complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atl.*, 127 S.Ct. at 1965.  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft*, 129 S.Ct. at 1950.  A determination of whether a complaint states a plausible claim for relief requires the reviewing court "to draw on its judicial experience and common sense."  *Id.* Under *Iqbal*, District Court Judges should dismiss lawsuits that seem "implausible" to them.  *Id.* at 1949-50.  Whether a lawsuit is implausible "requires the reviewing court to draw on [their]

3

judicial experience and common sense." *Id.* at 1950.

### III.    DISCUSSION

**A.    Implausibility of Amended Complaint**

This Court presided over the KL receivership.  This Court also presided over the Securities and Exchange Commission's (the "SEC") enforcement action regarding KL.  This Court knows that John Kim, Won Lee, and Yung Bae Kim were indicted for their roles in the KL fraud.  Yet to accept Plaintiffs' latest version of their story – that Fisher was the fourth participant in this massive conspiracy – the Court would have to accept that the SEC neglected to discover Fisher's role in the fraud during its investigation of the fraud and its prosecution of the enforcement action.

Plaintiffs allege that they learned about Fisher's involvement when they reviewed the Receiver's records, which would mean that the Receiver, Guy Lewis – an agent of this Court and a seasoned, well-respected former United States Attorney charged with the responsibility of investigating the fraud – also neglected to discover Fisher's role.  The Court would also have to accept that the Receiver's counsel, Michael Tein – yet another seasoned, well-respected litigator and a former Assistant United States Attorney – also neglected to discover Fisher's role.  The Court would have to accept that the federal agencies that indicted and prosecuted John Kim, Won Lee, and Yung Bae Kim also neglected to discover Fisher's role.  These suppositions are incredible.

Plaintiffs allege that Fisher hired William Michaelson ("Michaelson") to investigate KL and that Michaelson "**suggested** KL was a Ponzi scheme."  (Emphasis added.)  Later in the

4

Amended Complaint, Plaintiffs unequivocally state that Michaelson told Fisher, "**in no uncertain terms**, that the KL fund **was** a Ponzi scheme." (Emphasis added.)  Putting aside the obvious inconsistency, which reveals that Plaintiffs do not have their own story straight, the point remains that a participant in a fraud would not hire someone to investigate the fraud.  Plaintiffs' story is implausible, is belied by common sense and is inconsistent with this Court's judicial experience regarding the KL fraud.

The record demonstrates that Plaintiffs had investments with Kim prior to the interactions with Fisher.[2]  The lynchpin of Plaintiffs' case has always been, as this Court noted in its Order Denying Motion to Remand, that "Fisher convinced them to invest with Kim."  There would be no significance to Fisher's alleged "ringing endorsement," or Plaintiffs' supposed reliance on it, unless Plaintiffs and Kim had *no* prior relationship and did *not* know each other before the supposed endorsement.  Such was the impression that caused the Court to conclude "that Fisher convinced them to invest with Kim."  This supposition was based on Plaintiffs' pleadings, which gave this Court, and Fisher, the impression that Plaintiffs were suing Fisher because he was supposedly the reason Plaintiffs invested with Kim.  Plaintiffs now claim that Fisher only introduced them to Kim in relation to the BOA investment.  Plaintiffs never drew any such distinction previously, nor did they ever file anything to correct this Court's impression that

---

[2] In *Kimble v. U.S. Bank National Association*, No. 3:09CV342-RJC-DSC, 2009 WL 3152034, at *3 (W.D.N.C. Sept. 24, 2009), the District Court took judicial notice of loan documents attached to the defendants' motion to dismiss and dismissed the complaint with prejudice under *Iqbal*, because the loan documents contradicted the allegations in the complaint:

> [I]n deciding a Rule 12(b)(6) motion to dismiss in a case such as this
> where Plaintiffs have made a factual allegation that is clearly refuted
> by the documents which give rise to the disputed transaction, the
> Court may consider those documents.

(Citations omitted).

5

Fisher convinced Plaintiffs to invest with Kim.

Plaintiffs submitted a Proof of Claim on August 18, 2006, in the receivership, well before they sued Fisher.  In the Proof of Claim, Plaintiffs swear, under penalty of perjury, and attach documents that prove, that (1) they knew Kim in October 2003; (2) Lou Cohen – not Fisher – introduced them to Kim; (3) Lou Cohen – not Fisher – convinced them to invest with Kim; and (4) Plaintiffs first invested with Kim on October 27, 2003 – not September 28, 2004.  The Proof of Claim also shows that Plaintiffs invested thirteen times, for a total amount of nearly $6 million, before September 2004, when they supposedly received Fisher's "ringing endorsement."[3] The account statements also explain why Plaintiffs invested more money with Kim in September 2004 – Plaintiffs believed that Kim was making them significant returns on their investment.

During this time – again, before Fisher's alleged involvement – Plaintiffs' statements also reflect that they were making significant profits with Kim.  According to their quarterly statements, Plaintiffs enjoyed net returns of 10.36% for the first quarter of 2004 (1/1/04-3/31/04), 8.04% for the second quarter of 2004 (4/1/04-6/30/04), and 6.72% for the third quarter of 2004 (7/1/04 -9/30/04).

The basis of all three of Plaintiffs' previously-dismissed lawsuits was that Kim and Lee "persuaded" them to invest, not Fisher (or Cohen, for that matter, as is reflected on their Proof of

---

[3] On October 27, 2003, Plaintiffs invested **$750,000** with John Kim.   Four days later, on October 31, 2003, Plaintiffs invested another **$750,000**.  On November 6, 2003, Plaintiffs invested **$1 million** with Kim.  Plaintiffs continued to invest throughout the balance of 2003 and the Summer of 2004: November 19, 2003 (**$400,000**); December 19, 2003 (**$30,000**); December 23, 2003 (**$22,000**); January 8, 2004 (**$150,000**); January 9, 2004 (**$551,641.01**); February 5, 2004 (**$150,000**); February 9, 2004 (**$150,000**); May 3, 2004 (**$775,000**); June 18, 2004 (**$300,000**); and June 18, 2004 (**$700,000**).  Plaintiffs' "Investment History" shows that, from October 2003 until June 2004, well before Fisher's alleged involvement, Plaintiffs invested thirteen times with Kim, for a total of **$5,728,641**.

6

Claim).  Plaintiffs have no problem changing their position – even positions made under penalty

of perjury – when it suits them.  Accordingly, the premise on which Plaintiffs have based this

action – *i.e.*, "that Fisher convinced them to invest with Kim" – is implausible and is therefore

dismissed under *Iqbal*.

**B.      Inconsistent Allegations in the Complaint vs. the Amended Complaint**

District Courts can disregard allegations in an amended complaint that are inconsistent

with allegations from the prior complaint, leaving the original allegations as controlling.  *See*

*Wallace v. New York City Dep't of Corrections*, No. 95 CV 4404, 1996 WL 586797, at *2

(E.D.N.Y. Oct. 9, 1996) (District Court rejected allegations in and dismissed amended complaint,

because "plaintiff blatantly change[d] his statement of the facts in order to respond to the

defendants' motion to dismiss" and "the plaintiff directly contradict[ed] the facts set forth in his

original complaint"); *see also Collition v. Cravath Swaine & Moore LLP*, No. 08 Civ

0400(NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (District Court rejected

allegations in amended complaint and accepted allegations in original complaint, because

allegations were a "transparent attempt by plaintiff to amend his pleading in order to avoid a

dispositive defense"); *Baron v. Rabinovici*, No. CV-05-0110 (TCP)(ETB), 2006 WL 1318426, at

*3 (E.D.N.Y. May 12, 2006) (same).

Plaintiffs did not allege in their original Complaint that Fisher had knowledge of the

fraud.  Yet in the Amended Complaint, Plaintiffs now allege – explicitly – that Fisher had

knowledge:

> **BAS notified FISHER** of a $735,000 margin call on his account. [¶
> 15; emphasis added];

> **FISHER knew** or should have known that Kim was allocating gains to FISHER's account. . . . [¶ 25; emphasis added];
>
> At the time FISHER made these representations to DR. MELGEN, **he knew** they were false. [¶ 68; emphasis added];
>
> FISHER not only **made these misrepresentations, but failed to disclose material information concerning his BAS account**, including the substantial margin calls, the use of SFM funds to cover these margin calls, the allocation of gains and losses to benefit FISHER and damage Plaintiffs . . . . [¶ 69; emphasis added]; and
>
> **FISHER knew** at the time SFM opened its account that he was incurring large margin calls in his account. [¶ 94; emphasis added].

Like the plaintiffs in *Wallace, Collition*, and *Baron*, this is a "transparent attempt by plaintiff to amend his pleading in order to avoid a dispositive defense." *Collition*, 2008 WL 4386764, at *6. Even worse, these amended allegations are inconsistent with Plaintiffs' previous admissions under oath. This Court disregards Plaintiffs' contradictory allegations in the Amended Complaint.

**C.      Internally Inconsistent Allegations in the Amended Complaint**

District Courts can also dismiss a lawsuit when the allegations within the complaint are internally inconsistent. *See CEO Marketing Promotions Co. v. Heartland Promotions, Inc.*, 739 F.Supp. 1150, 1152-53 (N.D. Ill. 1990) (District Court dismissed count with allegation that was inconsistent with allegation common to all counts). The Amended Complaint is littered with internally inconsistent allegations.

Plaintiffs allege in certain paragraphs of the Amended Complaint that they do not know whether Fisher had knowledge of the fraud and thus merely suspect that Fisher had knowledge of

the fraud [DE 174 at ¶¶ 17, 24, 56, 93, 96]. Elsewhere, Plaintiffs allege that Fisher, in fact, had knowledge of the fraud [*id.* at ¶¶ 15, 25, 68-69, 80, 94, 107]. Plaintiffs allege that KL is not relevant to this lawsuit [*id.* at ¶ 6]. In other paragraphs, Plaintiffs allege that KL is, in fact, relevant to this lawsuit, such as: (1) Lou Cohen's role as KL's accountant [*id.* at ¶¶ 10, 32, 99]; (2) Fisher's retention of Michaelson to investigate KL [*id.* at ¶¶ 44, 47, 98]; (3) Cohen's attempt to borrow $25 million for KL [*id.* at ¶¶ 48, 99]; and (4) transfers of large amounts of money offshore, which likely included Plaintiffs' funds [*id.* at ¶ 51]. Regarding Michaelson, Plaintiffs allege that "[u]pon information and belief," Michaelson "suggested" that KL was a Ponzi scheme [*id.* at ¶¶ 44, 47], yet Plaintiffs then allege that Michaelson unequivocally "told FISHER, in no uncertain terms, that the KL fund was a Ponzi scheme" [*id.* at ¶ 98]. Likewise, Plaintiffs allege that Fisher stopped speaking to Melgen in October 2004 after allegedly withdrawing Fisher's funds [*id.* at ¶ 35], yet Plaintiffs then allege that Fisher and Melgen kept speaking thereafter, such as regarding Mel Nessel's alleged concerns of KL [*id.* at ¶ 46], and John Kim's stealing Fisher's and Plaintiffs' money [*id.* at ¶ 52].

Plaintiffs cannot keep their story straight in this pleading, let alone with their prior pleadings and filings. The allegations are internally inconsistent and such renders the Amended Complaint dismissable.

## D.    Failure to State a Claim

Plaintiffs' four claims all fail for the reasons stated above. Additionally, Plaintiffs' four claims fail to state a claim because Plaintiffs have still failed to allege the elements for each claim.

**A.     Fraud**

This Court dismissed Plaintiffs' fraud claim, because Plaintiffs did not allege any details of the supposed fraud [DE 169 at 9-10].  The fraud claim in the Amended Complaint fares no better.  As stated above, Plaintiffs cannot be permitted to now allege that Fisher had knowledge when they previously admitted the opposite.  Moreover, despite this Court's instructions, Plaintiffs have still failed to allege all of the particulars of the supposed fraud, including whether Fisher defrauded investors in addition to Plaintiffs, the nature of the agreement between Fisher and Kim and Won Lee, where the agreement occurred, who was present when the agreement occurred, and the like.

**B.     Conversion**

This Court previously dismissed Plaintiffs' conversion claim because Plaintiffs failed to allege that (1) Fisher had knowledge of the alleged allocation of covers and calls; (2) Fisher stole Plaintiffs' money; and/or (3) Fisher now has dominion over their property [DE 169 at 10].  As with the knowledge element, Plaintiffs cannot now allege that Fisher had dominion over Plaintiffs' property when they previously admitted that Kim, Won Lee, and/or Shoreland stole their property.

**C.     Conspiracy**

This Court dismissed Plaintiffs' conspiracy claim because Plaintiffs failed to allege that (1) Fisher knew of the alleged allocation of covers and calls, and (2) Fisher entered into an agreement with John Kim to commit an unlawful act [DE 169 at 10].  Again, as stated above, Plaintiffs cannot be permitted to now allege the exact opposite of what they previously alleged.

D.      **Negligent Misrepresentation**

This Court dismissed Plaintiffs' negligent misrepresentation claim, because Plaintiffs failed to allege that (1) Fisher had knowledge of the fraud, (2) Fisher had a financial interest in the supposed recommendation to invest with Kim, and (3) Fisher was in the business of providing investment advice [DE 169 at 7-8]. Importantly, this Court concluded that the alleged endorsements from Fisher were, if anything, purely gratuitous and personal opinions, and thus not actionable [*id.* at 8]. Again, as set forth above, Plaintiffs cannot be permitted to now allege that Fisher had knowledge of the fraud. Also, Plaintiffs now attempt to allege that "FISHER [] had a pecuniary interest," but that allegation fails because it is based on pure speculation:

> **[I]t is reasonable to believe** that either because FISHER was a sophisticated investor or based upon the advice given to him FISHER was aware that Kim would be able to allocate assets between the accounts of SFM and FISHER to benefit FISHER. FISHER therefore had a pecuniary interest in persuading DR. MELGEN to open an account . . . . [DE 174 at ¶ 17; emphasis added].

## IV.    CONCLUSION

Fisher's filings explain that this case has been very difficult for him. Fisher has been publicly accused of conspiring with John Kim and Won Lee. He has spent an enormous amount in fees, mostly to fend off Plaintiffs' litigation misconduct. The Court has been extremely indulgent in allowing Plaintiffs one final attempt to state a claim against Fisher, but Plaintiffs have again failed to do so. Plaintiffs' claims against Fisher are baseless. It is beyond peradventure that it is time for this litigation to end. It is hereby

ORDERED AND ADJUDGED that Defendant Jerome Fisher's ("Fisher") Motion to Dismiss Amended Complaint With Prejudice, filed October 15, 2009 **[DE 176]**, is

11

GRANTED.  This action is DISMISSED WITH PREJUDICE as to Defendant Jerome Fisher.  It is further

ORDERED AND ADJUDGED that Plaintiffs' Motion to Compel Receiver to Produce Documents, filed January 28, 2010 **[DE 200]**, is DENIED.  The Court will adjudicate motions for attorneys' fees in due course.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 22nd day of April, 2010.


S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE